UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| HIRAM PADILLA ROBLES, *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 14-79 (RC) |
| | : | | |
| v. | : | Re Document No.: | 10 |
| | : | | |
| JOHN KERRY, in his official capacity as U.S. Secretary of State, and UNITED STATES DEPARTMENT OF STATE, | : : : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### GRANTING DEFENDANTS' MOTION TO DISMISS

### I. INTRODUCTION

A 1972 terrorist attack claimed the life of Juan Padilla Ortiz. After his half-siblings ("Plaintiffs") were denied monetary compensation by the State Department, they filed the instant action against the Department and the Secretary of State in his official capacity ("Defendants"). Plaintiffs ask this Court to issue a declaratory judgment that the Department's denial of compensation violated their constitutional and statutory rights, and to order payment of the requested compensation. Before this Court is Defendants' motion to dismiss (ECF No. 10). Having reviewed the parties' filings, this Court grants the motion and dismisses the complaint without prejudice for failure to state a claim.

### II. BACKGROUND

While on a religious pilgrimage, Juan Padilla Ortiz was killed in a terrorist attack at the Lod Airport in Israel in May 1972. *See* Compl. 3, ECF No. 1. In April 2006, his siblings brought an action in this Court against Libyan authorities and others, alleging that they had

provided material support to the attackers and seeking damages. *See generally* Compl., ECF No. 1, *Franqui v. Syrian Arab Republic*, No. 06-cv-734 (D.D.C. Apr. 21, 2006).[1]

In 2008, the United States and Libya concluded an agreement providing for the settlement of terrorism-related claims against Libya pending in U.S. courts. *See* Claims Settlement Agreement Between the United States of America and the Great Socialist People's Libyan Arab Jamahiriya ("Claims Settlement Agreement"), Aug. 14, 2008, Defs.' Ex. A, ECF No. 10-2. Subsequently, the Secretary of State certified that Libya had provided sufficient funds for executing the settlements,[2] and the President issued an Executive Order ordering the settlement of covered claims and directing the Secretary to "provide for procedures" governing the settlements. Settlement of Claims Against Libya, Exec. Order No. 13,477, 73 Fed. Reg. 65,965 (Oct. 31, 2008). Mr. Padilla Ortiz's siblings then dismissed the *Franqui* action and obtained $10 million from the State Department under the prescribed claims settlement process. *See* Pls.' Notice of Dismissal with Prejudice, ECF No. 51, *Franqui v. Syrian Arab Republic*, No. 06-cv-734 (D.D.C. Dec. 31, 2008).

In 2009, pursuant to the International Claims Settlement Act of 1949, 22 U.S.C. § 1623(a)(1)(C), the Secretary of State referred several categories of claims against Libya to the Foreign Claims Settlement Commission (the "Commission"), an independent federal agency with authority to adjudicate certain international claims of the United States and its nationals. *See* Notice, Commencement of Claims Program, Foreign Claims Settlement Commission, 74

---

[1] In ruling on Defendants' motion to dismiss, the Court may consider court filings and Defendants' and Plaintiffs' exhibits because they constitute "matters of which it may take judicial notice," *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006), or documents referenced in and integral to the complaint, *see Marshall v. Honeywell Tech. Solutions, Inc.*, 536 F. Supp. 2d 59, 65 (D.D.C. 2008).

[2] *See* Certification under Section 5(a)(2) of the Libyan Claims Resolution Act Relating to the Receipt of Funds for Settlement of Claims Against Libya, Oct. 31, 2008, Defs.' Ex. B, ECF No. 10-3. Pursuant to the Libya Claims Resolution Act, Pub. L. No. 110-301, 122 Stat. 2999 (2008), this certification also rendered various sovereign immunity exceptions inapplicable to Libya, *id.* § 5(a)(1)(A), and triggered a prohibition on a private right of action against Libya or its agents in any federal or state court, *id.* § 5(a)(1)(B).

Fed. Reg. 32,193 (July 7, 2009); 22 U.S.C. §§ 1622–23 (describing structure and function of Commission). One such category—Category E—covered claims for wrongful death resulting from the 1972 terrorist attack in which Mr. Padilla Ortiz was killed, so long as the claimant "was not a plaintiff in [the *Franqui* action]," and the claim "meets the standard for . . . wrongful death . . . adopted by the Commission." 74 Fed. Reg. at 32,194.

Plaintiffs—Mr. Padilla Ortiz's half-siblings who were not party to the *Franqui* litigation—then filed a timely wrongful death claim with the Commission under Category E of the referral.[3] In its final decision, the Commission explained that although Category E "does cover wrongful death claims . . . by claimants who were not plaintiffs in a Pending Litigation," "the wrongful death claim for Mr. [Padilla] Ortiz has already been paid by the Department of State" in the amount of $10 million. Final Decision 3, Pls.' Ex. 1, ECF No. 12-1. The Commission then determined that this amount was the maximum per-death payment, based on a 2008 letter authored by the Deputy Secretary of State and past Commission practice. *Id.* at 3–5. On this basis, the Commission denied Plaintiffs' claim for lack of jurisdiction. *Id.* at 2, 7; Compl. 4.

Plaintiffs next filed an administrative claim before the State Department, seeking a "proportionate share of the $10,000,000.00 destined to the relatives of Juan Padilla Ortiz . . . ." Administrative Claim 8, Defs.' Ex. C, ECF No. 10-4. Construing Plaintiffs' claim as an "administrative tort claim" governed by the Federal Tort Claims Act, the State Department denied the claim on the grounds that no federal officials committed any "negligent or wrongful act or omission." Letter from Mary E. McLeod, U.S. Department of State, to Jean Paul Vissepó Garriga, Counsel for Claimants, Defs.' Ex. D, ECF No. 10-5 (citing 28 U.S.C. § 2672). The

---

[3] Plaintiffs initially filed claims under Categories B and C—which cover, respectively, certain claims by "living close relatives" and by claimants who "obtained a prior U.S. court judgment . . . awarding damages for wrongful death"—but then withdrew those claims and re-filed under Category E. *See* Compl. 4.

Department also advised Plaintiffs of their right to seek judicial review of "this determination under the Federal Tort Claims Act." *Id.*

Plaintiffs then filed the instant action against Defendants. In their complaint, Plaintiffs request two specific forms of relief. First, they seek a declaratory judgment under 28 U.S.C. § 2201[4] "that the State Department decision of denying plaintiff's [sic] right to compensation under the Libya Claims Program, violates the Fifth Amendment . . . and 42 U.S.C. § 1983." Compl. 9. Plaintiffs allege that because the State Department failed to notify them before issuing the maximum $10 million payment to Mr. Padilla Ortiz's full siblings, they were deprived of "their proprietary right of compensation without the due process of law, even when they followed the legal course established by the Commission and the Department of State." Compl. 7. Second, they ask this Court to "order the United States Department of State to compensate plaintiffs with $10,000,000 as established by the Libya Claims Program," on the basis that they are "entitled to the compensation" under 22 U.S.C. § 1623(a)(1)(C). *Id.* at 7, 9.

Before this Court is Defendants' motion to dismiss, which argues that because Defendants have not expressly waived sovereign immunity, this Court is without subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1); Mem. Supp. Defs.' Mot. Dismiss 7–10, ECF No. 10. Alternatively, the motion submits that even if jurisdiction is proper, dismissal is warranted on the grounds that Plaintiffs fail to state a claim. Fed. R. Civ. P. 12(b)(6); Mem. Supp. Defs.' Mot. Dismiss 11–18.

### III. ANALYSIS

#### A. Legal Standard

---

[4] *See* 28 U.S.C. § 2201(a) ("In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.").

"If sovereign immunity has not been waived, a claim is subject to dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction." *Clayton v. District of Columbia*, 931 F. Supp. 2d 192, 200 (D.D.C. 2013) (citing *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994) ("Sovereign immunity is jurisdictional in nature.")). Courts "may not find a waiver unless Congress' intent is unequivocally expressed in the relevant statute." *Hubbard v. Adm'r, E.P.A.*, 982 F.2d 531, 532 (D.C. Cir. 1992) (citation and internal quotation marks omitted).[5]

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).

### B. Sovereign Immunity

Because both parties have inadequately briefed the difficult question of whether Defendants have waived sovereign immunity, the Court reviews the relevant authorities before explaining their implications for the facts of this case. However, the Court declines to decide whether sovereign immunity has been waived, given that, in any event, dismissal is warranted by Plaintiffs' failure to state a claim.

The Administrative Procedure Act ("APA") contains an express waiver of sovereign immunity applicable to any claim "seeking relief other than money damages":

> An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

---

[5] Because Plaintiffs have sued the Secretary of State "in his official capacity," Compl. 1, and because the State Department received notice of the suit, the official-capacity action against the Secretary "is, in all respects other than name, to be treated as a suit against the [State Department]." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Therefore, this Memorandum Opinion's sovereign immunity analysis applies to Plaintiffs' claims against both the State Department and the Secretary of State.

5 U.S.C. § 702.  This waiver "applies to any suit whether under the APA or not."  *Chamber of Commerce of the U.S. v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996).

*Bowen v. Massachusetts*, 487 U.S. 879 (1988), teaches that "money damages" under 5 U.S.C. § 702 is money sought as compensation, not money to which a plaintiff alleges a statutory entitlement.  In *Bowen*, Massachusetts sued the Secretary of Health and Human Services to obtain Medicaid reimbursements that it claimed were mandated by the Medicaid Act.  The Supreme Court held that the APA sovereign immunity waiver permitted Massachusetts's action.  *Bowen*, 487 U.S. at 893.  The Court cited "two reasons": "First, insofar as the complaints sought declaratory and injunctive relief, they were certainly not actions for money damages.  Second, and more importantly, even the monetary aspects of the relief . . . are not 'money damages' as that term is used in the law."  *Id.*

Elaborating on the latter reason, the *Bowen* Court explained that Massachusetts's "suit to enforce § 1396b(a) of the Medicaid Act, which provides that the Secretary 'shall pay' certain amounts for appropriate Medicaid services, is not a suit seeking money in *compensation* for the damage sustained by the failure of the Federal Government to pay as mandated; rather, it is a suit seeking to enforce the statutory mandate itself, which happens to be one for the payment of money."  *Id.* at 900 (quoting 42 U.S.C. § 1396b(a)).  That is, the State "is seeking funds to which a *statute allegedly entitles it*, rather than money in compensation for the losses . . . that [the State] will suffer or has suffered by virtue of the withholding of those funds."  *Id.* at 901 (quoting *Md. Dep't of Human Res. v. Dep't of Health & Human Servs.*, 763 F.2d 1441, 1446 (D.C. Cir. 1985)) (emphasis added).  Moreover, "[t]he fact that . . . it is money rather than in-kind benefits that pass from the federal government to the states . . . cannot transform the nature of the relief sought—specific relief, not relief in the form of damages."  *Id.*; *see also America's Cmty.*

*Bankers v. Fed. Deposit Ins. Corp.*, 200 F.3d 822, 829 (D.C. Cir. 2000) ("Where a plaintiff seeks an award of funds to which it claims entitlement under a statute, the plaintiff seeks specific relief, not damages.").

Subsequently, in *Department of the Army v. Blue Fox, Inc.*, 525 U.S. 255 (1999), the Supreme Court explained that *Bowen*'s analysis hinged not on whether the relief sought was equitable, but on whether it constituted "money damages." In that case, Blue Fox, a subcontractor, was not paid by a general contractor for its work on a construction project for the Department of the Army. The Department of the Army did not require the general contractor to post bonds. Accordingly, the subcontractor sued the Army for the amount due to it, seeking an equitable lien on available funds allocated to the contract. *Id.* at 256–59.

The Supreme Court held that sovereign immunity barred the subcontractor's claim. *Bowen*, the Court explained, did not hold that the APA waives immunity for all *equitable* actions, but rather distinguished between "specific relief and substitute relief." *Id.* at 262. The Court reasoned that "liens, whether equitable or legal, are merely a means to the end of satisfying a claim for the recovery of money"; they provide not "the very thing to which [the plaintiff] was entitled" but rather "a security interest in the property, which [the plaintiff] can then use to satisfy a money claim." *Id.* at 262–63 (internal citations and quotation marks omitted). The Court concluded that Blue Fox's action for an equitable lien "constitutes a claim for 'money damages'" because "its goal is to seize or attach money in the hands of the Government as compensation for the loss resulting from the default of the prime contractor." *Id.* at 263.

To summarize, the APA waives sovereign immunity for all claims seeking "relief other than money damages." 5 U.S.C. § 702. As a general rule, "money damages" do not include declaratory and injunctive relief. *Bowen*, 487 U.S. at 893. Moreover, "money damages" are

categorically exclusive of *specific relief*—which includes monetary relief sought as a statutory entitlement. *Id.* at 900; *America's Cmty. Bankers*, 200 F.3d at 829. Lastly, the APA does not waive sovereign immunity for an action seeking an equitable remedy, such as a lien, whose "goal is to seize or attach money in the hands of the Government as compensation . . . ." *Blue Fox*, 525 U.S. at 263.[6]

Applying the above principles, the Court now considers in turn each of Plaintiffs' two requests—for a declaratory judgment and for an order mandating compensation. Compl. 9.[7]

### 1. Declaratory Judgment

Plaintiffs first ask this Court to issue a declaratory judgment "that the State Department decision of denying plaintiff's [sic] right to compensation under the Libya Claims Program, violates the Fifth Amendment . . . and 42 U.S.C. § 1983." Compl. 9. Defendants contend that because Plaintiffs' requested declaratory judgment would effectively confer upon them a "right to compensation," Mem. Supp. Defs.' Mot. Dismiss 10,[8] it is "merely a means to the end of satisfying a claim for the recovery of money," and thus falls outside the APA sovereign immunity waiver, *Blue Fox*, 525 U.S. at 262.

The Court hesitates to conclude that sovereign immunity bars Plaintiffs' request for a declaratory judgment. First, an action for a declaratory judgment, on its face, is "certainly not an action for money damages." *Bowen*, 487 U.S. at 893, *accord Esch v. Yeutter*, 876 F.2d 976, 984

---

[6] *See also* 14 Charles Alan Wright & Arthur R. Miller *et al.*, Federal Practice and Procedure § 3659 (3d ed. 2014) (discussing APA sovereign immunity waiver); *id.* § 3659 n.19 (reviewing case law defining specific relief).

[7] *See E.E.O.C. v. Peabody Western Coal Co.*, 610 F.3d 1070, 1085 (9th Cir. 2010) ("A claim to which sovereign immunity is not a defense may be entertained even if another claim in the suit is dismissed because of sovereign immunity." (citation omitted)).

[8] To be sure, requests for monetary compensation are found elsewhere in the complaint. *See* Compl. 1 ("This is a civil action in which the plaintiff's [sic] . . . claim just compensation . . . ."); *id.* ("Plaintiffs were unlawfully deprived of their compensation . . . ."); *id.* at 7 ("Plaintiffs are entitled to the compensation established by the Department of State . . . ."); *id.* at 8 ("[P]laintiffs were denied their right for compensations [sic] because the Department of State paid other relatives in an off-Commission process."); *id.* ("Plaintiffs . . . are undoubtedly entitled to be compensated under the Libya Claims Program.").

(D.C. Cir. 1989) (concluding that APA sovereign immunity waiver permitted action for injunction against arbitrary or capricious denial of subsidies).[9] Furthermore, the Court is unpersuaded that the requested declaratory judgment, standing alone, would mandate the payment of any money or establish Plaintiffs' "right to compensation," rather than simply vacate the State Department's decision on the basis of a due process violation.[10]

Even assuming *arguendo* that the declaratory judgment would effectively mandate the payment of money, the Court is not persuaded that the requested monetary relief would constitute "money damages" under 5 U.S.C. § 702. *See Bowen*, 487 U.S. at 893 ("[M]ore importantly, even the monetary aspects of the relief that the State sought are not 'money damages' . . . ."). The Court now turns to this analysis.

### 2. Compensation

In addition to the declaratory judgment, Plaintiffs seek an order directing the State Department "to compensate plaintiffs with $10,000,000 as established by the Libya Claims Program," on the basis that Plaintiffs are "entitled to the compensation" under 22 U.S.C. § 1623(a)(1)(C). Compl. 7, 9.

Defendants correctly observe that "[t]he United States has not waived its sovereign immunity for constitutional tort claims." Mem. Supp. Defs.' Mot. Dismiss 8 (quoting *Harris v. Holder*, 885 F. Supp. 2d 390, 397 (D.D.C. 2012)). Defendants are also right in noting that although Plaintiffs reference 22 U.S.C. § 1623 and 42 U.S.C. § 1983 throughout their complaint,

---

[9] *See also Cobell v. Norton*, 240 F.3d 1081, 1094 (D.C. Cir. 2001) ("Insofar as the plaintiffs seek specific injunctive and declaratory relief . . . the government has waived its sovereign immunity under [5 U.S.C. § 702]."); *Clark v. Library of Congress*, 750 F.2d 89, 102 n.29 (D.C. Cir. 1984) ("The explicit exclusion of monetary relief makes it clear that sovereign immunity is abolished only in actions for specific relief (injunction, declaratory judgment, mandatory relief, etc.)." (quoting 14 Wright & Miller, Federal Practice and Procedure § 3655, at 29 (Supp. 1982))).

[10] Defendants are correct, however, that Plaintiffs do not expressly ask for "the opportunity to now participate in an adjudicatory process—which they already have done." Mem. Supp. Defs.' Mot. Dismiss 10; *cf. Esch*, 876 F.2d at 984 (concluding that suit was not for "money damages" where plaintiffs sought only a "redetermination" before an agency, which on remand "might decide, on the basis of all the facts that [plaintiffs] still are not entitled to increased benefits").

*see* Compl. 5–9, neither statutory provision contains a waiver of sovereign immunity. Mem. Supp. Defs.' Mot. Dismiss 8. For their part, Plaintiffs point out only that their complaint does not contain the word "damages." Mem. Supp. Pls.' Resp. Defs.' Mot. Dismiss 9, ECF No. 12. But Plaintiffs cite no authority for the proposition that a complaint's literal avoidance of the term "damages" compels a finding that the claim "seek[s] relief other than money damages." 5 U.S.C. § 702; *cf. Blue Fox*, 525 U.S. at 263 (holding that action for lien seeks "money damages" because "its goal is to seize or attach money in the hands of the Government as compensation . . .").

Both parties, however, overlook the fact that the complaint appears to allege that Plaintiffs "are entitled to the compensation" under 22 U.S.C. § 1623(a)(1)(C). Compl. 7. Insofar as the complaint does so, Plaintiffs would "see[k] an award of funds to which [they] clai[m] entitlement under a statute," and the requested monetary relief requested would be specific relief, not compensatory damages. *America's Cmty. Bankers*, 200 F.3d at 829; *see also Bowen*, 487 U.S. at 901. On the other hand, in this case, the conceptual boundary of "money damages" is murkier. Here, the Libya Claims Program aims to compensate victims who allegedly suffered tortious injury.[11] To the extent that Plaintiffs ultimately seek compensatory relief under that program, one could argue that they in fact seek "money damages," notwithstanding their allegation that a statute entitles them to relief. *See Blue Fox*, 525 U.S. at 263. At least one court has held that such "hybrid" relief—that is both specific and compensatory—still triggers the

---

[11] *See* Claims Settlement Agreement, Defs.' Ex. A, art. II ("The two Parties agree to authorize the establishment of a humanitarian settlement fund . . . as the basis for settling the claims and terminating and precluding the suits specified in Article I.").

APA sovereign immunity waiver.[12]  The Supreme Court and the D.C. Circuit, however, have not squarely addressed such a situation.

In light of these complex sovereign immunity issues and insufficient briefing from the parties, the Court declines to decide whether Defendants have waived sovereign immunity. Instead, for reasons that follow, the Court concludes that Plaintiffs' complaint fails to state a claim and must be dismissed under Rule 12(b)(6).[13]

### C.  Failure to State a Claim

Regardless of whether the APA waives sovereign immunity as to Plaintiffs' requests for a declaratory judgment and for $10 million, this Court holds that both claims must be dismissed under Rule 12(b)(6) for failure to state a claim.

#### 1.  Declaratory Judgment

As noted above, Plaintiffs request a declaratory judgment that the State Department's denial of monetary relief "violates the Fifth Amendment . . . and 42 U.S.C. § 1983." Compl. 9.

At the outset, the Court concludes that Plaintiffs are not entitled to a declaratory judgment that Defendants violated 42 U.S.C. § 1983.  That statute imposes liability only on individuals "acting under color of state law." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098,

---

[12] One district court reasoned that the *Bowen* Court "le[ft] open the possibility that an award could constitute both compensatory and specific relief: '[W]hile in many instances an award of money is an award of damages, occasionally a money award is *also* a specie remedy.'" *Glaskin v. Klass*, 996 F. Supp. 67, 71 (D. Mass. 1998) (quoting *Bowen*, 487 U.S. at 895 (citations omitted) (emphasis added)).  Under this reading of *Bowen*, if monetary relief could be viewed both as specific relief and as money damages, then the APA waives sovereign immunity.  *See id.*

[13] *See Meyer*, 510 U.S. at 484 (explaining that first inquiry into sovereign immunity waiver and second inquiry into "whether the source of substantive law . . . provides an avenue for relief" are "analytically distinct").  Another potential jurisdictional issue not addressed by the parties is that while the complaint facially alleges that 42 U.S.C. § 1983 provides this Court with jurisdiction, the complaint fails to allege that Defendants acted under color of state law as required by that statute.  *See* Compl. 2.  Given the complaint's constitutional and statutory claims, general federal-question jurisdiction under 28 U.S.C. § 1331 would be proper, but the complaint does not expressly allege such basis for jurisdiction.  Nonetheless, the Court excuses this pleading defect because "[t]he facts alleged and the claim[s] asserted [are] sufficient to demonstrate the existence of a federal question" under 28 U.S.C. § 1331. *Schlesinger v. Councilman*, 420 U.S. 738, 744 n.9 (1975) (noting that complaint "nowhere mentioned" § 1331), *accord Provident Life & Accident Ins. Co. v. Waller*, 906 F.2d 985, 988 (4th Cir. 1990).

1104 (D.C. Cir. 2005) (internal quotation marks omitted).  Nowhere in the complaint do Plaintiffs allege that Defendants—a federal agency and official—acted under color of state law.

"[T]o make out a violation of [procedural] due process, the plaintiff must show the Government deprived her of a 'liberty or property interest' to which she had a 'legitimate claim of entitlement,' and that 'the procedures attendant upon that deprivation were constitutionally [in]sufficient.'"  *Roberts v. United States*, 741 F.3d 152, 161 (D.C. Cir. 2014) (citation omitted).[14]  A governmental authority "creates a [protected property] interest . . . by establishing 'substantive predicates' to govern official decision-making and, further, by mandating the outcome to be reached upon a finding that the relevant criteria have been met."  *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 462 (1989) (internal citation omitted).  That is, in addition to discretion-limiting substantive predicates, the applicable statutes or regulations must contain "explicitly mandatory language, *i.e.*, specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow . . . ."  *Id.* at 463 (internal quotation marks and citation omitted), *accord Wash. Legal Clinic for the Homeless v. Barry*, 107 F.3d 32, 36 (D.C. Cir. 1997).

This Court's review of the statutes and regulations has not revealed "explicitly mandatory language" requiring the Commission (or State Department) to issue an award to any eligible claimant.  *Ky. Dep't of Corr.*, 490 U.S. at 463.[15]  The Executive Order directing the Secretary of State to implement the Claims Settlement Agreement provides only that the Secretary "shall

---

[14] Defendants do not argue that the statute's bar against judicial review, 22 U.S.C. § 1623(h), deprives this Court of power to decide the due process challenge.  In any event, this claim would fail.  *See Ralpho v. Bell*, 569 F.2d 607, 620 (D.C. Cir. 1977) (holding that constitutional claims are reviewable despite finality provision in Micronesian Claims Act and explaining that "legislation that frees an administrative agency from judicial scrutiny of its adherence to the dictates of the Constitution must pose grave constitutional questions").

[15] Given the lack of explicitly mandatory language, this Court need not decide whether the statutes and regulations contain sufficient "substantive predicates"—"particularized standards or criteria" that "serve to limit discretion."  *Ky. Dep't of Corr.*, 490 U.S. at 462 (citations omitted).  Arguably, however, the 2009 referral's Category E criteria, under which Plaintiffs filed their claim, would be sufficient.  *See supra* Part II.

provide for procedures" for processing claims. Exec. Order No. 13,477, 73 Fed. Reg. at 65,965. The notice announcing the Commission's adjudication program outlines various eligibility criteria, but contains no requirement that "if the . . . substantive predicates are present, a particular outcome *must follow* . . . ." *Ky. Dep't of Corr.*, 490 U.S. at 463 (emphasis added). Indeed, the notice provides that "the Commission will . . . certify to the Secretary of the Treasury those claims *that it finds to be valid*"; the notice does not *require* the Commission to validate any claim or class of claims. 74 Fed. Reg. at 32,194 (emphasis added). Nor is any language in the Claims Settlement Agreement or claim filing instructions availing. *See generally* Claims Settlement Agreement; Foreign Claims Settlement Commission Libya Claims Program (Referral Dated Jan. 15, 2009) Instructions for Completing Statement of Claim, Pls.' Ex. 2, ECF No. 12-2.[16] In any event, the complaint does not direct this Court to any mandatory language and therefore fails to state a plausible claim that Plaintiffs were denied procedural due process. *Iqbal*, 556 U.S. at 678.

---

[16] The parties' discussion of the property interest inquiry is unhelpful. Without analysis, Plaintiffs assert that they have a protected property interest because they "satisfied all the requirements to be compensated." Mem. Supp. Pl.'s Resp. Defs.' Mot. Dismiss 12. Defendants proffer a range of arguments, but none are persuasive. Defendants first contend that Plaintiffs cannot have a property interest because "under Puerto Rico law, they are not part of Padilla Ortiz's estate." Mem. Supp. Defs.' Mot. Dismiss 16. But this fact seems irrelevant if Plaintiffs ultimately filed their claim under Category E (non-parties to pending litigation) rather than Category B (living close relatives who were parties to pending litigation), a distinction that Defendants themselves highlight in their reply. 74 Fed. Reg. at 32,194; Defs.' Reply Supp. Mot. Dismiss 7. Second, Defendants contend that the Executive Order authorizing the settlement procedures "explicitly disclaims the creation of any . . . rights" protected by the Due Process Clause. Mem. Supp. Defs.' Mot. Dismiss 16 (citing Exec. Order No. 13,477, 73 Fed. Reg. at 65,966). But the D.C. Circuit has questioned the efficacy of such disclaimers, at least standing alone. *See Wash. Legal Clinic for the Homeless*, 107 F.3d at 38. Lastly, Defendants contend that the Commission denied their claim, and that such a decision is not subject to judicial review. Defs.' Reply Supp. Mot. Dismiss 8. But the law cannot be that an agency's denial of a claim extinguishes the property interest for purposes of procedural due process analysis; otherwise, any denial of benefits would also foreclose a later procedural due process challenge. *Cf. Tarpeh-Doe v. United States*, 904 F.2d 719, 721–23 (D.C. Cir. 1990) (analyzing existence of protected entitlement to certain procedures in course of agency adjudication, notwithstanding agency's denial of administrative claim).

Accordingly, Plaintiffs fail to state a claim for a declaratory judgment that the State Department's denial of monetary relief "violates the Fifth Amendment . . . and 42 U.S.C. § 1983." Compl. 9.[17]

### 2. Compensation

Plaintiffs likewise fail to state a claim for $10 million in monetary relief under 22 U.S.C. § 1623(a)(1)(C) because that statute does not provide any such entitlement. Rather, the statute merely sets forth the Commission's jurisdiction:

> The Commission shall have jurisdiction to receive, examine, adjudicate, and render a final decision with respect to any claim of the Government of the United States or of any national of the United States . . . included in a category of claims against a foreign government which is referred to the Commission by the Secretary of State.

22 U.S.C. § 1623(a)(1)(C). To the extent Plaintiffs rely on an implied right of action, they must demonstrate that the statute "displays an intent to create not just a private right but also a private remedy." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).[18] But Defendants persuasively explain that there is no evidence of such intent; to the contrary, the statute explicitly provides that Commission decisions are not subject to judicial review. *See* 22 U.S.C. § 1623(h). Defendants further contend that an implied right of action against the State Department would be difficult to reconcile with the fact that this statute imposes no obligations on that agency at all; the statute provides only that the Commission can hear claims "referred . . . by the Secretary of

---

[17] Because this Court concludes that Plaintiffs fail to allege plausibly that they have a protected property interest, it need not decide whether they adequately allege that the procedures by which the deprivation occurred were "constitutionally insufficient." *See Roberts*, 741 F.3d at 161 (internal alteration omitted).

[18] *See also Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 15–16 (1979) ("While some opinions of the Court have placed considerable emphasis upon the desirability of implying private rights of action in order to provide remedies thought to effectuate the purposes of a given statute, what must ultimately be determined is whether Congress intended to create the private remedy asserted, as our recent decisions have made clear." (internal citation omitted)).

State." *Id.* § 1623(a)(1)(C).[19]  The Court thus concludes that Plaintiffs' claim for monetary relief must also be dismissed under Rule 12(b)(6) for failure to state a claim.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (ECF No. 10) is GRANTED. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  November 21, 2014                                            RUDOLPH CONTRERAS
                                                                     United States District Judge

---

[19] Given the terms of the Claims Settlement Agreement, the Court wonders whether there is a redressability problem.  July 7, 2011, was the deadline for completing adjudications, 74 Fed. Reg. at 32,193, and under the Claims Settlement Agreement, the settlement funds (originally obtained from Libya) might no longer be available, *see* Annex to Claims Settlement Agreement, Defs.' Ex. A ("The Fund will have a duration of six months from its creation unless otherwise agreed by the Parties.").  Alternatively, it is unclear whether the State Department could recover the $10 million already paid to Mr. Padilla Ortiz's full siblings and re-allocate the funds between the full siblings and Plaintiffs.  On the other hand, the D.C. Circuit has previously held that a statutory provision that required the Micronesian Claims Commission to "wind up its affairs . . . not later than three years after the expiration of the time for filing claims" could not "allow the Commission to walk away from what [plaintiff] asserts was unconstitutionally shoddy treatment."  *Ralpho*, 569 F.2d at 626–28.  In that case, the claimant had alleged a due process violation in the course of the Micronesian Claims Commission's adjudication of his claim.  The *Ralpho* court rejected the Commission's argument that it lacked "any legal power even to redress its own malfeasance," and concluded that "a brief additional lease on life for the Commission" would provide possible redress.  *Id.* at 626–27.  (*Ralpho*, it should be noted, predated the later line of procedural due process cases requiring "explicitly mandatory language" for the existence of a protected entitlement.)  But because the parties have not addressed the issue, the Court will not opine further on the matter here.